# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

JAMES ROZENSKI,

       Petitioner,

       v.                                     Case No. 9-C-775

JUDY SMITH, Warden
Oshkosh Correctional Institution

       Respondent.

## DECISION AND ORDER

On August 11, 2009, petitioner James Rozenski filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of two counts of sexual assault/use of force, one count of false imprisonment, and one count of misdemeanor battery. On January 21, 2005, the petitioner was sentenced to a ten-year prison term consisting of seven-years imprisonment and three-years extended supervision for each count of sexual assault, a three-year prison term consisting of one-year imprisonment and two-years extended supervision for the false imprisonment account, and nine-months imprisonment for the misdemeanor battery count, all to be served concurrently.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 3 (E.D. Wis.). The parties have consented to United

States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

In his petition, the petitioner states nineteen grounds for relief. Ground one alleges that the state trial court applied the wrong legal standard to the petitioner's claim of ineffective assistance of counsel. Grounds two through six and nine through fifteen allege ineffective assistance of counsel based on counsel's failure to do the following: to review and present exculpatory evidence (ground two); to research, obtain, and present additional exculpatory evidence (ground three); to research or seek expert opinions concerning the medical findings, specifically, the lack of any physical evidence to support the victim's claims of a brutal rape (ground four); to object to the prosecutor's improper closing arguments, specifically, the prosecutor's vouching for the state's witnesses, the prosecutor's claim of facts not in evidence, the prosecutor's expression of her opinion of the petitioner's guilt or credibility, and the prosecutor's remarks designed to inflame the jury (ground five); to object to the submission of the victim's statement to the jury during deliberations (ground six); to object to the testimony of the State's expert witness, Dr. Nielsen (ground nine); to conduct adequate discovery (ground ten); to object to the State's motion in limine (ground 11); to object to the admission of the petitioner's underwear (ground 12); to object to repetitious hearsay testimony by the State's witnesses (ground 13); to move for a mistrial (ground 14); and, to object to State Criminal Jury Instruction 140, which instructed the jury to search for the truth (ground 15).

Grounds seven, eight, and sixteen through nineteen assert that the prosecutor engaged in prosecutorial misconduct by: suggesting that the jury had to choose between the petitioner's version of events or the version presented by the state's witnesses (ground seven); using perjured testimony to obtain a conviction and suppressing evidence in violation of <u>Brady v.</u>

<u>Maryland</u>, 373 U.S. 83 (1963) (ground eight); soliciting hearsay testimony and failing to adhere to the trial court's repeated admonishments (ground 16); making improper remarks during closing arguments (ground 17); and focusing on facts not in evidence (ground 18), all in violation of the petitioner's due process rights.

Finally, ground nineteen asserts that the state circuit court denied the petitioner an impartial jury. The petitioner contends that the size of the jury pool was too small, that six of the twelve jurors were intrinsically connected with each other, that Rochelle Drehmel was observed talking to one of the jurors during trial, and that inadmissible evidence was submitted to the jury during deliberations. (Petition for a Writ of Habeas Corpus at 60).

United States District Judge Rudolph T. Randa conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases on September 27, 2009. Judge Randa dismissed the petitioner's first ground for relief because it "is included in the standard for review of the merits of state habeas corpus petitions and does not constitute a separate ground for relief." (Court's Order of September 27, 2009). He then consolidated the petitioner's remaining grounds for relief into the following three grounds: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) denial of the right to be tried by an impartial jury. After consolidating the petitioner's claims, Judge Randa determined that each of the three claims stated a cognizable constitutional ground for relief.

Judge Randa also reviewed the petition to determine whether the petitioner exhausted each of his claims in state court. After such review, he determined that it was not possible at that juncture in the proceedings to determine whether the petitioner had presented each of his contentions regarding ineffective assistance of counsel, prosecutorial misconduct, and an impartial jury to the Wisconsin state courts. Judge Randa then concluded that dismissal of the

petition under Rule 4 was not warranted, and ordered the respondent to answer the petition for a writ of habeas corpus. The respondent answered the petition on October 28, 2009. The parties subsequently briefed the petition. Therefore, the petition is ready for disposition and will be addressed herein.

## **RELEVANT FACTUAL BACKGROUND**

The Wisconsin Court of Appeals set forth the relevant facts in its March 4, 2008 decision:

Rozenski was charged with sexually assaulting Rochelle Drehmel in Wausau on February 22, 2002. Drehmel told police that she and Rozenski had been dating for about a year but their relationship ended several weeks prior to the assault. Drehmel stated they had a fight the night before New Year's Eve, and she went out on New Year's Eve with other friends, including Jeremy Zilisch, whom she eventually began dating.

At trial, Drehmel testified that she had agreed to take care of Rozenski's parents' cats in Wausau while they were on vacation. At this time, Rozenski was attending Marquette University in Milwaukee but drove up to Wausau the night before the assault, looking for Drehmel. Rozenski knocked on the door of Drehmel's parents' house at 1:17 a.m., inquiring as to Drehmel's whereabouts. Drehmel's mother testified that Rozenski stated, "Rochelle and I, we are having some difficulties in our relationship, and I thought I would try to come up and work some things out with her." Rozenski also went to Drehmel's workplace in the early morning hours looking for her. Scott DeBroux testified that he was in the break room when Rozenski came up to the window and knocked. Rozenski indicated he was looking for Drehmel. Rozenski then drove to Antigo searching for Drehmel, returning back to Wausau at 4:45 a.m. During this period, Rozenski telephoned Drehmel on several occasions and left messages. Drehmel stayed at Zilisch's that night.

On the morning of the assault, Drehmel fed the cats and then went to a hair appointment. Rozenski telephoned her when she was at the hair appointment and asked her to return to his parents' house. Drehmel agreed, and when she arrived, Rozenski wanted to know where she had been the night before. Rozenski also talked about working out their relationship but Drehmel told him the relationship was over and he needed to move on.

Drehmel and Rozenski sat on the couch and Rozenski leaned over and grabbed her by the coat, pulling her over to him. Rozenski started to hug and kiss her. She pushed away and told him that his actions were not going to help their relationship. Rozenski released her and she moved back to the other end of the couch. Rozenski then grabbed her again, preventing her from moving away from him. She again told him his actions were not going to help their relationship, and

- 4 -

he released her. Rozenski pulled her over a third time onto his lap, and tried to pull her jacket off.

Rozenski then pinned her down by forcefully holding her wrists while she attempted to push away. Rozenski took one hand and put it down her workout pants and inserted his finger into her vagina. He then picked her up and carried her into the bedroom where he used his hands to cross her wrists and pin her hands above her head while pulling down her pants. He then put his penis inside her, while she pushed and screamed at him to stop. Rozenski pulled her hair and became more aggressive until he ejaculated. Rozenski then started crying and saying, "I love you, I love you," while hugging her. Rozenski also said, "You wouldn't let me walk away from you once, and I'm not going to let you walk away from me...." Rozenski then let Drehmel up but held onto her to prevent her from getting off the bed while continuing to say that he loved her.

Rozenski finally allowed Drehmel to get up and get dressed. He said, "Just stop, I want to talk to you, you know, I love you. Let's just talk about this. We can work things out." While Rozenski was talking, Drehmel's cellular phone rang, and Rozenski demanded to know who was calling. A fight ensued over the phone and Rozenski eventually got the phone out of her pocket, trying to determine from the caller identification feature who telephoned. Rozenski kept asking, "Who's calling? How do I find out who called?" They continued to struggle and the phone rang a second time. Rozenski grabbed it, and ran into another room, and said, "Oh, Jeremy." Drehmel then got up and screamed, "Jeremy, help me." Rozenski turned to her and said, "You bitch," then grabbed Drehmel and took her into the bedroom a second time. While straddling her on the floor, he demanded to know who "Jeremy" was and took both hands and began to squeeze her neck. Rozenski said, "We're going to be together forever." He then stated, "You know how? I'm gonna kill you and I'm gonna kill myself because we're going to be together forever." Rozenski then stated that he was going to "bash your skull in." Drehmel then said to him, "In the name of the Lord, Jesus Christ, get off of me." Rozenski replied, "Your God can't save you now."

Rozenski then sat up a little bit and he just kept staring at Drehmel. Rozenski talked about taking her back to Milwaukee with him when Drehmel's father knocked on the front door of the residence. Drehmel was crying and when she opened the door her father asked her if she was all right. Drehmel responded, "Yes. I am all right." Drehmel's father drove her car home and Drehmel rode with her mother in her parents' car. On the way home, Drehmel told her mother that she was raped by Rozenski and that he tried to kill her. Her mother informed her Zilisch had called them and that Zilisch said he heard Drehmel on the phone. After arriving at their home, Drehmel's father called the police. During the call, Rozenski pulled in their driveway. Shortly thereafter, the police arrived and apprehended Rozenski.

The defense theory at trial was essentially that Drehmel was crying rape to hide the fact that she was simultaneously pursuing two relationships. The jury found Rozenski guilty of all counts. Rozenski subsequently filed a pro se postconviction motion raising numerous claims of ineffective assistance of

defense counsel, Bridget Boyle. Rozenski also alleged prosecutorial impropriety, among other things. After a <u>Machner</u> hearing, the court concluded trial counsel's performance was not deficient and Rozenski was not prejudiced. It also rejected Rozenski's claims of prosecutorial misconduct. The court denied Rozenski's motion for a new trial and Rozenski [appealed].

(Respondent's Brief in Opposition to Petition for Writ of Habeas Corpus [Respondent's Opposition Brief], Exh. B. at 2-5).

On appeal to the Wisconsin Court of Appeals, the petitioner asserted the same claims that he presents to this court in his habeas petition. Grounds two through nineteen of the habeas petition match grounds three through twenty presented to the state court on appeal. Although the petitioner raised all of the claims in his habeas petition when he appealed his conviction, he neglected to provide any supporting argument in his brief as to ten of those grounds. Consequently, the Wisconsin Court of Appeals declined to consider the grounds not briefed. The court then rejected the petitioner's remaining claims on various grounds, affirming the conviction and the circuit court's postconviction order.

On March 4, 2008, the petitioner filed a petition for discretionary review of the court of appeals' decision with the Wisconsin Supreme Court. In his petition, the petitioner raised all claims presented to this court in the petitioner's petition for habeas corpus. The court denied review of the petition by order dated May 13, 2008.

## ANALYSIS

The petitioner's writ of habeas corpus asserts eighteen grounds for relief, which have been consolidated to three constitutional grounds for relief: (1) ineffective assistance of counsel, (2) prosecutorial misconduct, and (3) denial of an impartial jury. The respondent asserts that the petitioner procedurally defaulted at least ten of his claims in state court,

preventing federal review of such claims. The petitioner disagrees, maintaining that he fairly presented the claims not considered by the Wisconsin Court of Appeals because they were inextricably linked to the claims actually considered by that court. He further contends that the court did not provide a plain statement that it was dismissing the claims it did address based on procedural default as required by Michigan v. Long, 463. U.S. 1032 (1983).

## **Procedural Default**

To succeed on a habeas corpus claim, a petitioner must establish that he is a person in custody under a state court judgment in violation of the Constitution, laws or statutes of the United States. 28 U.S.C. § 2254(a). In habeas proceedings, a federal court will not consider the merits of a petitioner's constitutional claims if he procedurally defaulted those claims. Claims can be procedurally defaulted in three ways. First, federal courts will not consider a claim if the petitioner failed to exhaust all available state court remedies. A claim becomes exhausted either when it is presented to each level of the state court for appellate review or when it could have been, but was not and cannot be, presented for further appellate review. Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1991).

Second, federal courts will not consider claims that the petitioner did not fairly present for one full round of state appellate review. To fairly present a claim, the petitioner must present both the operative facts and the legal principles that control each claim to each level of the state judiciary. Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001); see also, Chambers v. McCaughtry, 264 F.3d 732, 738-89 (7th Cir. 2001). In Wisconsin, this requires petitioners to present their federal claims to both the Wisconsin Court of Appeals and the Wisconsin Supreme Court.

Third, federal courts will not review claims that were procedurally defaulted during state appellate proceedings. <u>Moore v. Bryant</u>, 295 F.3d 771, 774 (7th Cir. 2002). For example, if the highest state court to consider the merits of the petitioner's claims rendered its decision based on independent and adequate state procedural grounds, federal habeas relief is barred. <u>Braun v. Powell</u>, 227 F.3d 908, 912 (7th Cir. 2000). Whether the ground is independent depends on state law and whether it is adequate depends on federal law. <u>Liegakos v. Cooke</u>, 106 F.3d 1381, 1385 (7th Cir. 1997). A procedural default constitutes an independent state-law ground if "the last state court to consider the question actually relied on procedural default as the basis for its decision." <u>Braun</u>, 227 F.3d at 912 (citing <u>Willis v. Aiken</u>, 8 F.3d 556, 561 [7th Cir. 1993]). The state court must have "'clearly and expressly' relied on the procedural default as the basis of its ruling." <u>Id.</u> (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263 [1989]). Where the state appellate court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state procedural ground. <u>Sanders v. Cotton</u>, 398 F.3d 572, 580 (7th Cir. 2005).

"To be an adequate ground of decision, the state's procedural rule must be both firmly established and regularly followed." <u>Id.</u> (quotations omitted). It must be applied in a "consistent and principled way; it cannot be employed infrequently, unexpectedly, or freakishly." <u>Id.</u> (quotations omitted). Moreover, "[t]he state rule of practice must have been in place, and enforced, 'by the time as of which it is to be applied.'" <u>Liegakos</u>, 106 F.3d at 1385 (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 424 [1991]). The disposition of the last state court to issue an opinion determines whether the state has invoked a ground of forfeiture. <u>Liegakos</u>, 106 F.3d at 1385.

Once a court determines that the petitioner procedurally defaulted his claim, it cannot reach a decision on the merits of that claim unless the petitioner can demonstrate, "(1) a cause for and actual prejudice arising from failing to raise the claim as required or (2) that enforcing the default would lead to a 'fundamental miscarriage of justice.'" Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72, 87 [1977]).

To prove cause for and actual prejudice, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A showing by the petitioner that the factual or legal basis for a claim was not reasonably available to counsel or a showing that interference by officials made compliance impracticable also constitutes actual prejudice. Id. The fundamental miscarriage of justice exception applies only when the petitioner is actually innocent of the crime for which he was charged, which occurs only in "extremely rare" and "extraordinary case(s)." Gomez, 350 F.3d at 679 (citing Schlup v. Delo, 513 U.S. 298 [1995]).

> To support a colorable claim of actual innocence the petitioner must come forward with "new reliable evidence . . . that was not presented at trial." [Schlup, 513 U.S. at 324]. The petitioner must also establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

Gomez, 350 F.3d at 679.

In the present case, the petitioner's brief submitted to the Wisconsin Court of Appeals lists each claim presently before the court in the "statement of issues" section. However, the petitioner briefed only nine of those claims. The petitioner did not present any arguments supporting his impartial jury claim. (ground nineteen in the petition). He also failed to brief six of twelve grounds raised in support of his ineffective assistance of counsel claim. Specifically, the petitioner's brief to the Wisconsin Court of Appeals did not address the following ineffective

assistance of counsel claims: failure to object to the state's expert (ground nine); failure to conduct discovery (ground 10); failure to object to the State's motion in limine (ground 11); failure to object to the admission of the petitioner's underwear (ground 12); failure to object to the admission of repetitious hearsay (ground 13); and failure to object to the jury instructions (ground 15). The court deemed all grounds that the petitioner did not brief waived. (Respondent's Opposition Brief, Exh. B, at 1, n.1).

Of the claims that the petitioner did brief before the court of appeals, the court found that the briefing was inadequate for several of the claims. Specifically, the court found that the petitioner did not adequately brief his claim that counsel was ineffective for failing to obtain and present additional exculpatory evidence, including her failure to obtain telephone records, subpoena witnesses from Ms. Drehmel's workplace, and impeach Ms. Drehmel (part of ground three in the petition). Id. at 4. The court also found that the petitioner did not adequately brief the following prosecutorial misconduct claims: the prosecution's statement that the jury must choose between two versions of the events (ground seven); the prosecutor's improper remarks during closing testimony, specifically her opinions regarding the credibility of the witnesses and the guilt of the petitioner (ground 17); and the prosecution's focus on facts not admitted into evidence (ground 18). Repeatedly noting that "[w]e will not consider underdeveloped arguments," and that underdeveloped arguments are considered "to be waived," the court of appeals did not address these issues on the merits. Id.

A review of the petitioner's brief confirms that he either did not include arguments supporting these claims or did not adequately develop his arguments. Rather, he attempted to incorporate by reference arguments set forth in his circuit court briefs, which he attached to

his appellate brief in an appendix to avoid violating word count restrictions set forth in Wis. Stat. §809.19(8)(c).  The petitioner maintains that because he adequately presented the overarching constitutional ground to each level of the state judiciary, this court must consider all instances of ineffective assistance of counsel and prosecutorial misconduct raised in his habeas petition regardless of whether they were addressed in state court.  He bases this assertion on Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005).  However, this conclusion misinterprets the court's statement in Peoples.

It is well-established that courts reviewing habeas petitions may not consider newly-asserted issues that support an overarching constitutional claim, even if the overarching claim was presented in state court.  See, e.g., Stevens v. McBride, 489 F.3d 883, 893-94 (7th Cir. 2007); United States ex rel. Redding v. Godinez, 900 F. Supp. 945, 949 (N.D. Ill 1995); Williams v. Benik, 165 Fed. Appx. 487, 490 (7th Cir. 2006).  This is because review is limited to those issues fairly presented to the state court by presenting not only the legal principles controlling the claim, but also the operative facts supporting such claims.  Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004).

At the time of the petitioner's appeal, Wisconsin had a firmly established and regularly applied rule that underdeveloped arguments are deemed waived.   Bilda v. Milwaukee Cnty., 295 Wis. 2d 673, 722 N.W.2d 116 (Defendant waived argument by failing to raise it with sufficient prominence.); M.C.I., Inc. v. Elbin, 146 Wis.2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (Court need not consider undeveloped arguments.); Reiman Associates, Inc. v. R/A Advertising, Inc.,102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (Issues not briefed or argued on appeal are deemed abandoned.); State v. Flynn, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994) (Court will not consider arguments not developed in brief but rather

developed in trial court materials the defendant attempted to incorporate by reference so as to meet word count requirements.).  This court finds that the court of appeals applied that rule to this case in a "consistent and principled way."  <u>Sanders</u>, 398 F. 3d at 580.  Therefore, these issues are procedurally defaulted and this court is barred from considering them on habeas review unless the petitioner can show cause and prejudice or a fundamental miscarriage of justice.

The petitioner asserts that he had cause for his procedural default.  Specifically, he contends that his lack of legal knowledge and inexpert draftsman skills caused him to procedurally default his claims.  In fact, he acknowledges that he raised each of his claims on appeal so that he could avoid a bar on successive post-conviction motions.  He also states that he directed the state appellate court to his trial court briefs rather than including such argument in his brief so that he could comply with word count limitations.   He maintains that his unfamiliarity with the law caused him to believe that this action was proper because such briefs were part of the record.

Unfamiliarity with the law, however, does not establish cause as contemplated by <u>Murray</u>, which requires an external impediment to prevent compliance with procedural rules.  477 U.S. at 488.   Courts repeatedly have held that a person's limited education and minimal comprehension of the legal system cannot establish cause for procedural default.  <u>Harris v. McAdory</u>, 334 F.3d 665,668-69 (7th Cir. 2003) (Petitioner's <u>pro se</u> status and lack of education "does not constitute adequate grounds for cause.").   <u>United States ex rel. Stewart v. Ragen</u>, 231 F.2d 312, 314 (7th Cir. 1956);  Courts have even gone so far as to hold that illiteracy is insufficient to establish cause for procedural default. <u>Henderson v. Cohn</u>, 919 F.2d 1270, 1272 (7th Cir. 1990); <u>Smith v. Newsome</u>, 876 F.2d 1461, 1465-66 (11th Cir. 1989).   Thus, the

- 12 -

petitioner's lack of legal knowledge and inexpert briefing skills do not establish cause and prejudice sufficient to overcome his procedural default.

Alternatively, the petitioner contends that barring his procedurally defaulted claims would result in a fundamental miscarriage of justice. He maintains that if such constitutional errors were not committed, the prosecution could not have proven his guilt beyond a reasonable doubt, meaning that no reasonable juror would have found him guilty. This argument lacks merit.

The fundamental miscarriage of justice exception "applies only in the 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent of the crime for which he is imprisoned." Gomez, 350 F.3d at 679 (citing Schlup, 513 U.S. at 298). To show actual innocence, the petitioner must present reliable evidence that was not presented at trial and establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. (citations omitted). Here, the petitioner's fundamental miscarriage of justice argument relies on claims of constitutional error, not a claim of actual innocence. Therefore, the petitioner has failed to establish that enforcing the default would result in a fundamental miscarriage of justice.

Because the petitioner has not shown cause and prejudice for default or that enforcing the default would result in a fundamental miscarriage of justice, this court concludes that the petitioner has defaulted his aforementioned claims.

### The Merits

Excluding the claims that are procedurally defaulted, there are eight claims remaining to be addressed on the merits. Specifically, the following ineffective assistance of counsel claims

remain to be considered: failure to present exculpatory evidence including a Valentine's Day card, letters, and plane tickets (ground two); failure to obtain exculpatory evidence including Mr. Zilisch's criminal history (part of ground three); failure to retain a medical expert (ground four); failure to object to improper remarks made by the prosecutor during her closing argument (ground five); failure to object to the victim's statement being given to the jury during deliberations (ground six); and failure to move for a mistrial (ground 14). The following prosecutorial misconduct claims also remain to be addressed: the prosecutor's use of perjured testimony and violation of Brady (ground eight) and the prosecutor's elicitation of hearsay testimony (ground 16).

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-877 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and

mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F. Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S. Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## Ineffective Assistance of Counsel

The petitioner asserts that the Wisconsin Court of Appeals' decision regarding his ineffective assistance of counsel claims was improper in three respects. First, he maintains that the decision was contrary to clearly established law because the court applied a burden of proof that the United States Supreme Court proscribed in Williams v. Taylor, 529 U.S. 362 (2000). According to the petitioner, "a state court violates Strickland and the Sixth Amendment if it requires a defendant to prove even that the result most likely would be different." (Petitioner's Brief in Response to Respondent's Answer and Brief in Opposition to Petition for Writ of Habeas Corpus [Petitioner's Response] at 14). Second, the petitioner contends that the state was required to "prove beyond a reasonable doubt" that counsel's errors "did not contribute to the verdict obtained" pursuant to Chapman v. California, 386 U.S. 18, 24 (1967). Finally, the petitioner asserts that the Wisconsin courts unreasonably applied clearly established federal law to the facts of his case.

The Wisconsin Court of Appeals examined the petitioner's alleged failings of counsel pursuant to Strickland v. Washington, 466 U.S. 668 (1984), which sets forth a two-part test by which courts are to analyze ineffective assistance of counsel claims. Under Strickland, a petitioner must first show that counsel's performance was deficient. 466 U.S. at 687. If he can show that counsel's performance was deficient, he must also show that "the deficient performance prejudiced the defense." Id. "Unless a defendant makes both showings, it cannot

be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The first component requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Under the second component, a petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. If the court determines that the petitioner has failed to satisfy either component of the Strickland test, it need not address the other. See Chichakly v. United States, 926 F.2d 624, 630-31 (7th Cir. 1991).

The Supreme Court has instructed courts that in evaluating the performance of a trial attorney, they are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As such, the petitioner "has a heavy burden in proving a claim of ineffectiveness of counsel." Jarrett v. United States, 822 F.2d 1438, 1441 (7th Cir. 1987) (citing Strickland, 466 U.S. at 687). The performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. See Strickland, 466 U.S. at 689.

When considering claims of ineffective assistance of counsel on collateral attack from a state court conviction, courts do not apply the Strickland standard directly. Raygoza v. Hulick, 474 F.3d 958, 963 (7th Cir. 2007). A court's "consideration is mediated by the standards set forth in 28 U.S.C. §2254(d)(1)." Id. Section 2254(d)(1) "adds a layer of respect for the state court's application of [Strickland]." Holman v. Gilmore, 126 F.3d 876, 882 (7th Cir. 1997).

Therefore, courts addressing ineffective assistance of counsel claims on habeas review must honor reasonable state court decisions, unless the state court's rejection of the petitioner's ineffective assistance claim was either "contrary to, or involved an unreasonable application of" the performance and prejudice rules set out in Strickland. See Washington, 219 F.3d at 628.

Contrary to the petitioner's assertions, the Wisconsin Court of Appeals' decision was not contrary to clearly established federal law. First the petitioner asserts that the state appeals court's decision was contrary to Strickland because the court applied a standard expressly forbidden in Williams, a preponderance of the evidence standard. However, the petitioner does not identify any language from the court of appeals' decision that indicates it applied a preponderance of the evidence standard, or any standard other than the reasonable probability standard set forth in Strickland. In fact, the only statement referred to by the petitioner in support of his assertion that the state courts applied the wrong standard was a statement made by the state circuit court judge hearing the petitioner's postconviction motion. This court is to consider only with the opinion issued by the highest state court to consider the merits of the petitioner's case, which was the Wisconsin Court of Appeals.

Second, the petitioner asserts that the state decision was contrary to Strickland because the state court did not require the state, as the beneficiary of several constitutional errors, to prove beyond a reasonable doubt that counsel's errors did not contribute to the verdict. The petitioner states that this is necessary pursuant to Chapman, which held that "before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. The question presently before the court is whether the state court's finding that the petitioner's counsel provided effective assistance of counsel was contrary to federal law. Chapman set forth the proper standard for analyzing

- 18 -

questions of harmless error, not ineffective assistance of counsel, and thus is inapplicable.  For these reasons, the Wisconsin Court of Appeals' decision was not contrary to clearly established federal law.

Finally, the petitioner asserts that the court of appeals unreasonably applied <u>Strickland</u> to the facts of his case.  The court began by addressing the petitioner's claim that his trial counsel was ineffective for failing to present a Valentine's Day card, letters, and plane tickets as exculpatory evidence.  The court concluded that the letters, which were sent prior to the first week of February, were irrelevant because the victim testified that she did not definitively end her relationship with the petitioner until then.  The court deemed the plane tickets irrelevant as well, stating that the status of the trip was a matter of continuing discussion in light of their breakup.  With respect to the Valentine's Day card, the court noted that petitioner's counsel had testified at the <u>Machner</u> hearing that she did not believe that the Valentine's Day card was inconsistent with the victim's testimony that the couple broke up ten to fifteen days before the assault because the card was dated February 11.  The court of appeals then concluded that the petitioner had not raised a reasonable probability that admission of the card into evidence at trial would have resulted in a different verdict.

With respect to counsel's failure to obtain Mr. Zilisch's criminal history, the court found that the sheriff's report contained no evidence of Mr. Zilisch's character for truthfulness or of untruthful conduct and that nothing indicated that an independent investigation into Mr. Zilisch's criminal history would "unearth the evidence to impeach him." (Respondent's Opposition Brief, Exh. B at 5).

Regarding counsel's failure to retain a medical expert, the court of appeals concluded that counsel was not deficient for failing to retain a medical expert.  In support of its conclusion,

the court noted that the petitioner failed to identify an expert who would testify on his behalf, or how such expert would testify if called. In addition, the court found that counsel explored the absence of any physical injury to the victim during cross-examination of the state's expert. The court concluded that "because the absence of physical injuries neither proves or disproves sexual assault," counsel's decision not to retain a defense expert "was a reasoned strategic choice and therefore 'virtually unchallengeable.'" Id.

The court also found that counsel was not ineffective for failing to object to improper remarks made by the prosecutor during closing arguments. Before the court of appeals, the petitioner asserted that his trial counsel should have objected when the prosecutor vouched for witnesses, stated facts not in evidence, expressed her opinion of the petitioner's guilt, and made inflammatory remarks. The court of appeals found that the prosecutor did not vouch for the state's witnesses. Rather, her comments were descriptive of the witness's demeanor. Further, the court found that the prosecutor's statements that Ms. Drehmel was truthful "was an unobjectionable argument in a case involving conflicting testimony." Id. at 6. Moreover, the court determined that even if any of these remarks could be considered improper, the petitioner did not suffer any prejudice because the jury was instructed that closing arguments are not evidence and that the jury is the sole judge of the credibility of witnesses.

The court found that, with respect to each factual error that the petitioner cited to in the prosecutor's closing arguments, the fact was either supported by the trial testimony, was addressed by the petitioner's counsel in some respect, or "fell short of an argument requiring an objection . . .." Id. Likewise, the court found that the prosecutor's statements regarding the petitioner's guilt either were addressed or were unobjectionable. As to the petitioner's assertion that counsel should have objected to inflammatory remarks made by the prosecutor, the court

found that the remarks were supported by the testimony, including by the petitioner's own testimony.  Therefore, the court found that the petitioner's attorney "was not deficient for failing to object to the prosecutor's closing argument" Id. at 6.  The court stated that the petitioner was not prejudiced because the jury was instructed that closing arguments are not evidence.  Id.

As to counsel's failure to object to the victim's police statement being sent to the jury, the court of appeals noted that the petitioner's "argument is based on the improper premise that the statement was not received in evidence."  Id.  The court found that whether to send evidence to the jury room is a matter of trial court discretion and that the trial court did not erroneously exercise that discretion in the petitioner's case.  The court pointed out that the jury had requested to see the statement and that the victim's statement was mostly a repetition of her testimony at trial.  In addition, the court found that the petitioner was very minimally prejudiced by this, if at all, because the jury had heard the petitioner's testimony that same morning and, therefore, would not have difficulty recalling or processing his statements.  The court also concluded that counsel did not object to this based on a "deliberate and reasonable trial strategy" because the victim's police statement included information that could be detrimental to the prosecution, but which the defense counsel was prohibited from raising.  Id. at 7.

The issue of counsel's failure to move for a mistrial was addressed by the court of appeals in tandem with the issue of sending the victim's statement to the jury during deliberations because it was part of the same "deliberate and reasonable trial strategy."  Id. The victim's statement revealed that she had consensual sex with Mr. Zilisch the night before the assault.  Petitioner's counsel had brought this passage to the trial court's attention, noting that sending this to the jury was in violation of the rape shield law.  Despite the fact that this was more prejudicial to the state's case, the prosecutor did not ask for a mistrial.  When asked if she

would move for a mistrial, petitioner's counsel responded, "No, I'm not, and I have discussed it with my client, and he does not want me to ask to move for a mistrial." Id. In light of this, the court of appeals found that the petitioner "cannot now complain about the choice [counsel] made." Id.

The petitioner maintains that the Wisconsin Court of Appeals unreasonably applied Strickland to the facts underlying each of the above issues. He repeatedly asserts that in a case in which the credibility of witnesses is the main determining factor, any potential piece of evidence is key. Therefore, he contends that his counsel's failure to obtain or present exculpatory evidence or evidence to impeach a witness, retain a medical expert, object to the prosecutor's statements, object to the victim's police state being submitted to the jury, and move for a mistrial all amount to the ineffective assistance of counsel and that the court of appeals' decision to the contrary was unreasonable.

However, reviewing the decision with the deference required by 28 U.S.C. § 2254(d)(1), this court finds that the court of appeals carefully considered each of these claims and dismissed them on reasonable bases – the evidence that the petitioner claims is exculpatory or would impeach Mr. Zilisch was irrelevant or nonexistent; counsel effectively cross-examined the state's medical expert and the petitioner failed to establish the existence of a medical expert who would testify differently than the state's expert; the prosecutor's statements were either supported by the testimony, addressed by the petitioner's counsel, or unobjectionable; the jury was properly instructed regarding what constitutes evidence and that the jury is the sole arbiter of credibility; and counsel had a reasonable trial strategy, endorsed by the petitioner himself, supporting her decisions not to object to the submission of the victim's police statement to the jury or move for a mistrial. Given that the petitioner has the burden to establish both that his

counsel's performance was deficient and that such deficiency prejudiced the petitioner – both very high standards – the court of appeals' decision is not erroneous, let alone objectively unreasonable.  Thus, the petitioner has failed to establish that the court of appeals' decision was contrary to, or involved an unreasonable application of, the principles set forth in Strickland.

**Prosecutorial Misconduct**

The petitioner claims that the Wisconsin Court of Appeals' decision regarding his prosecutorial misconduct claims also was unreasonable.  The respondent disagrees.

"In cases where prosecutorial misconduct is alleged, the touchstone of due process . . . is the fairness of the trial and not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 220 (1982).  The question is whether the alleged prosecutorial misconduct  "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  It is not enough that the prosecutor's conduct was undesirable.  Id.  Rather, the misconduct must "poison" the atmosphere of the trial to such a degree that it would be unfair to permit the conviction to stand.  Lieberman, 128 F.3d at 1097-98.

The petitioner claims that the prosecutor violated his constitutional rights by resting his case on perjured testimony.  Contrary to the petitioner's contention, the court of appeals determined that the prosecutor did not engage in misconduct.  Noting that the petitioner "confuses perjured testimony with testimony that conflicted with his own, but was believed by the jury," the court found that the petitioner offered "no proof of perjury."  (Respondent's Opposition Brief, Exh. B. at 8).  In addition, the court found that, even assuming some testimony

was perjured, the petitioner did not show that the prosecution "knowingly offered perjured testimony or even that it later discovered that it unwittingly used perjured testimony." Id.

Although the petitioner claimed that the prosecutor violated Brady, the court found that the evidence that the prosecution purportedly withheld – the victim's telephone records – were not in the state's exclusive possession.  The court further found that the telephone records were not clearly exculpatory, even if they were in the possession of the state.   The court also determined that the telephone records were not material in the constitutional sense because the victim never denied speaking to the petitioner on the phone frequently during the month leading up to the assault and even testified extensively about a phone conversation she had had with the petitioner.  Thus, the court concluded that "[f]urther details about telephone contact between the two would not raise a reasonable probability that the results of the proceeding would have been different."  Id.

In addressing the petitioner's claim that the prosecutor elicited hearsay testimony, the court of appeals noted that the petitioner did "not specify instances of solicited hearsay, but merely cites to his appendix . . ..  This he may not do."  Id. at 7.  Even though the petitioner failed to adequately brief this issue, the court addressed it.  The court found that the petitioner did not identify any instances of hearsay testimony that were caused by the prosecutor, as opposed to an inattentive or overzealous witness.  In addition, the court of appeals found that the trial court adequately instructed the jury to disregard all stricken testimony and there was no evidence that the jury did not follow that instruction.  Therefore, the court of appeals found that the prosecutor did not engage in misconduct.

The petitioner maintains that the court of appeals' decision on these issues was unreasonable.  However, he does not specify in what ways that decision was unreasonable.

With respect to the hearsay issue, he merely asserts that hearsay testimony is detrimental, but does not address the court of appeals' findings that the prosecutor did not solicit the hearsay and that the jury was properly instructed to disregard the stricken testimony. Regarding the issue of perjury, the petitioner offers only conclusory statements that Ms. Drehmel's testimony was perjured and that the prosecutor "knew or most certainly should have known" this. (Petitioner's Brief at 44). As to the asserted <u>Brady</u> violations, the petitioner does not show how the court of appeals' decision was unreasonable in light of the fact that the victim testified that she and the petitioner spoke on the phone frequently in the month leading up to the assault. The petitioner had the burden before the court of appeals to establish that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly</u>, 416 U.S. at 643. This court finds that the Wisconsin Court of Appeals carefully considered the claims of prosecutorial misconduct that the petitioner adequately had briefed and that the court's decision on these issues was not contrary to, or an unreasonable application of, clearly established law. 28 U.S.C. § 2254(d),

In sum, this court is precluded from considering many of the claims raised in the petitioner's petition for a writ of habeas corpus because the claims were procedurally defaulted and the petitioner has not shown cause and prejudice to overcome the procedural default. Regarding his remaining claims, the petitioner failed to establish that the Wisconsin Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established law. Accordingly, the petitioner's petition for a writ of habeas corpus will be denied.

Finally, in accordance with Rule 11 of the Rules Governing Section 2254 Cases as amended, the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the application."  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court concludes that the petitioner has failed to make this requisite showing that his constitutional rights were denied.  Therefore, the court will deny a certificate of appealability as to the petitioner's claims.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**. (Docket #1).

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of March, 2012.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge